N THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
No. 3:24-cv-1121

| | | |
|---|---|---|
| SHERRYSHURISH HENDERSON, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CIVIL COMPLAINT AND |
| | ) | JURY TRIAL DEMAND |
| AUTOZONERS, LLC | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

Plaintiff Sherryshurish Henderson, by and through her undersigned attorney with HKM Employment Attorneys, LLP, files this Civil Complaint and Jury Demand ("Complaint") against Defendant, Autozoners, LLC ("Autozoners") and in support, sets forth the following allegations and causes of action:

## PRELIMINARY STATEMENT

1.     This is an action arising under North Carolina and federal law for gender harassment, hostile work environment, constructive discharge, negligent supervision and retention, and intentional and negligent infliction of emotional distress.

2.     Plaintiff is seeking legal, equitable and declaratory relief under common law, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §

2000e et seq., (Title VII), which prohibits retaliation against an employee for engaging in protected activity and this being an action for discrimination in violation of North Carolina public policy, namely N.C.G.S. §§ 143-422.2, and providing for relief against discrimination in employment. Plaintiff's claims arise from sex discrimination and retaliation to which she was subjected while employed by Defendant.

## PARTIES

3.     At all times material hereto, Plaintiff, Sherryshurish Henderson is a female citizen of the United States and the State of North Carolina and currently resides in Mecklenburg County, North Carolina.

4.     Plaintiff was, until on or about May of 2022, employed by Defendant.

5.     Upon information and belief, Defendant, Autozoners, LLC, is a North Carolina limited liability company that maintains a registered office in Raleigh, North Carolina. Defendant is an employer within the meaning of Title VII.

6.     The actions making the basis of Plaintiff's Complaint occurred at a business located at 10100 E. W.T. Harris Boulevard, Charlotte, North Carolina 28212 in the County of Mecklenburg.

## JURISDICTION AND VENUE

7.     The Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1343, this being a proceeding seeking to enforce rights and

2

remedies secured in Title VII. Jurisdiction is also conferred upon this court by 28 U.S.C. § 2000(e) et seq. and 28 U.S.C. § 1331.

8.      Supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367, which entitles Plaintiff to bring a pendent claim for wrongful termination in violation of common law and North Carolina public policy, namely N.C.G.S. § 143-422.2.

9.      Venue is proper in this district and division under 28 U.S.C.A. § 1391(b) as the alleged unlawful acts occurred in this district and division.

## ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED

10.     The Plaintiff has exhausted her administrative remedies by timely filing a Complaint with the United States Equal Employment Opportunity Commission (EEOC), on July 27, 2022.

11.     On September 27, 2024, The EEOC issued a cause determination in response to Plaintiff's EEOC Charge, finding reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge. *See* Exhibit A.

12.     Plaintiff filed the present action within ninety (90) days of receipt of same and has met all administrative prerequisites prior to filing this action.

## FACTUAL ALLEGATIONS

13. Ms. Henderson was hired by Defendant around September of 2021 as a salesperson. She was employed in that capacity and worked in that capacity throughout her employment with Defendant.

14. Ms. Henderson was assigned to work at store no.: 3901 located at 10100 E. WT Harris in Charlotte, North Carolina.

15. Ms. Henderson performed her job satisfactorily at all times.

16. During her employment with Defendant while working at the WT Harris location, Ms. Henderson was subjected to unwelcomed, objectional, and offensive treatment based on her sex.

17. Several male employees, including those in supervisory positions, subjected Ms. Henderson to inappropriate conduct and offensive comments.

18. During Ms. Henderson's employment with Defendant, she was the only female employee working at the WT Harris location.

19. Throughout Ms. Henderson's employment, Defendant has allowed sexually offensive comments and conduct to be made against her. Sexually inappropriate comments and conduct have been allowed to occur without consequence to the perpetrators. The acts continued over time and long after Plaintiff complained.

20. During her employment with Defendant, Ms. Henderson was subjected to offensive comments made by her Assistant Store Manager, Jeffrey Blair ("Blair").

4

Blair called Ms. Henderson a bitch and he asked her why black people glue hair to their heads, or why black people were always acting rumbunctious.

21. Ms. Henderson complained to management on the floor that her work environment was hostile and objected to comments made by Blair as being offensive.

22. The Regional District Manager, Danny Parker ("Parker") admits he was aware of Blair's comments and gave instructions that Blair be reminded to leave conversations about personal appearance out of the workplace.

23. Ms. Henderson also complained about her work assignment when she was disproportionately pushed to do cash register duties rather than being a driver or given the chance to change car batteries, although she obtained her certificate of driving like her similarly situated male coworkers.

24. Defendant and its agents failed to address her complaint. Management's response was inadequate to stop the behavior to which Ms. Henderson was exposed and management failed to take appropriate action to remove inappropriate comments from the workplace or to assign her to duties that were fair as compared to her male coworkers.

25. Management's failure to address Ms. Henderson's concerns allowed a hostile work environment to continue, therefore she reached out to the regional office.

26.    On or about January 21, 2022, Ms. Henderson reached out to the regional office where she provided her full name, phone number, and work ID number and her full complaint related to her hostile work environment.

27.    Ms. Henderson's action of calling the regional office was a form of protected activity in that Ms. Henderson was reporting conduct that she in good faith believed to be discriminatory.

28.    After Ms. Henderson made a complaint to the regional office, Parker was made aware of the complaint, and he reached out to her.

29.    When Parker reached out to Ms. Henderson, Parker instructed her not to go over his head again, and to discuss issues she had directly with her Store Manager, Jose Hernandez ("Hernandez").

30.    Ms. Henderson understood Parker was upset because she made a complaint to the regional office.

31.    Ms. Henderson felt Parker's message was meant to discourage her from escalating or making future complaints to anyone outside of her store manager. Parkers' comments were of the type that would tend to discourage similarly situated employees from reporting, opposing, or participating in the internal formal complaint process.

6

32.    Hernandez, dismissed Ms. Henderson's entire complaint to the regional office. Hernandez instructed Ms. Henderson to stay out of Blair's way and stated Blair would stay out of her way.

33.    Instead of taking adequate remedial measures following Ms. Henderson's complaint to the regional office, Defendant and its managers made matters worse.

34.    After Ms. Henderson made a complaint to the regional office, she was subjected to shame and blame, she was harassed and demeaned by other male managers before she was ultimately assaulted by a male coworker while working an assigned shift.

35.    Because Hernandez took no remedial measures against Blair, Blair continued to harass and follow Ms. Henderson around the store using his position as manager to intimidate her.

36.    Blair's harassment finally stopped when he resigned from his position.

37.    The lack of support from management caused Ms. Henderson greater anxiety and stress.

38.    In addition to dealing with Blair's inappropriate behavior, David Guzman ("Guzman"), a Commercial Specialist, subjected Ms. Henderson to sexually humiliating comments by habitually asking her if she could tie a cherry stem with her tongue.

39.    Throughout her employment, Guzman would ask Ms. Henderson if she had learned to tie a cherry with her tongue approximately 2-3 times a day.

40.    When Ms. Henderson objected to Guzman's offensive comments, Guzman rebuffed her concern by stating "it's really not that serious".

41.    Guzman's comments were repeatedly witnessed by several male employees and customers.

42.    On some occasions, male managers witnessed Guzman asking Ms. Henderson if she had learned to tie a cherry with her tongue directly in front of them, but none of the male managers took remedial action to prevent the sexually humiliating harassment.

43.    On or about May 6, 2022, Parts Sales Manager, Nicholson Ellis ("Ellis") observed Ms. Henderson wearing shorts on her day off when she came into the store to check her schedule. Ellis subjected Ms. Henderson to unwanted sexual gestures and comments by stating, "You look good, real good and I'd like to see what that is like" while he gyrated and thrusted his pelvis towards her.

44.    Ms. Henderson reported Ellis' inappropriate behavior to the Assistant Store Manager, Donyell McIlwaine ("McIlwaine"), but no remedial action was taken.

45.    Ms. Henderson was forced to endure sexually discriminatory behavior that was not expected of her similarly situated male counterpart.

8

46.     Ms. Henderson's action of reaching out to McIlwaine was a form of protected activity in that Ms. Henderson was reporting conduct that she in good faith believed to be sexual harassment.

47.     McIlwaine instead questioned Ms. Henderson if she was going to wear the same shorts back to work again.

48.     Upon information and belief, Defendant has a written sexual harassment policy that includes sexual flirtations, advances, propositions, requests for sexual favors, verbal abuse of a sexual nature, gestures or verbal comments about an individual's body, and sexually degrading words.

49.     Defendant nor its managers exercised reasonable care to prevent or promptly correct the sexual harassment or discrimination they either witnessed or themselves participated in against Ms. Henderson.

50.     Defendant and its managers violated their own policy and the law.

51.     When Ms. Henderson brought her concerns to management she was often met with a dismissive remark or blamed for the sexual harassment of her male counterparts.

52.     On May 16, 2022, Ms. Henderson went to work with her Parts Sales Manager, Nicholson Ellis ("Ellis") and Franklin Monroe ("Monroe"), a co-worker.

9

53.     During her shift, Ms. Henderson was subjected to a threatening and hostile work environment perpetrated by Monroe, a male employee and management's failure to act.

54.     Ms. Henderson called the police after Monroe charged towards her while cursing and berating her in front of customers.

55.     Ms. Henderson's action of calling the police was a form of protected activity in that Ms. Henderson was reporting conduct that she in good faith believed to be illegal.

56.     Although Ms. Henderson went to Ellis for help, he refused to assist her and stated he was staying out of it. Ellis knew Monroe harassed and made unwanted physical contact against Ms. Henderson, a female employee under his supervision.

57.     After calling the police, Ms. Henderson sent the Store Manager, Yannie Gunthrope ("Gunthrope") a text message stating, "Hi, this [S]herryshurish at work feeling really unsafe Franklin just tried to attack me and Nicholas the supervisor did nothing" and "I just had to call the police," "Are you still coming up here?" and "Hey [T]eddy can you transfer me to Milton [R]d. I no longer want to work at wt Harris location I don't fe[e]l safe…"

58.     Instead of investigating these serious allegations or taking any action to remediate the harassing work environment, Gunthrope callously threatened to fire Ms. Henderson when he arrived on scene.

59.     Gunthrope's treats and tone conveyed he was not only being dismissive of Ms. Henderson's complaints, but she felt her job was threatened because she called the police for help. Gunthrope's response was meant to dissuade Ms. Henderson from taking further actions to support her complaints.

60.     Gunthrope's threat to take away Ms. Henderson's livelihood caused her greater anxiety and stress.

61.     On May 17, 2022, Ms. Henderson sent Gunthrope a text message stating, "To be honest I will write it and send it to you I can't come back in the store I still feel very uneasy and unsafe alone with embarrassed by the events yesterday being attacked by Franklin with no interference or help from the male supervisor on duty! I'm just have to wrap my mind around what happened because I'm still so very confused."

62.     On May 18, 2022, Ms. Henderson sent Gunthrope a text message stating, "Good morning, is it possible for me to work at the Monroe [rd] AutoZone from here on out." She received no response from her store manager regarding her request for store transfer.

63.     On May 19, 2022, Ms. Henderson sent Gunthrope a text message stating, "Hey can you message me [HR] phone number."

64.     On May 19, 2022, Ms. Henderson reached out to Defendant's Human Resources Department.

65.    Ms. Henderson was instructed to write a summary which she did.

66.    Ms. Henderson also called Human Resources to provide a summary of events and was told she would receive a return phone call.

67.    Ms. Henderson was too afraid to return to work without assurance provided for her safety.

68.    Ms. Henderson was constructively terminated from her employment when Defendant failed to relocate her to another store.

69.    Ms. Henderson's work conditions were so intolerable that a reasonable person would quit.

## FIRST CLAIM FOR RELIEF
### (Retaliatory Hostile Work Environment)

70.    Plaintiff realleges and incorporates by reference the above paragraphs as though set forth separately herein.

71.    At all times relevant, Plaintiff was an "employee" and Defendant was an "employer" within the meaning of Title VII.

72.    Defendant is an employer within the meaning of 42 U.S.C. § 12111(5)(A), in that it has engaged in an industry that affects commerce and employs more than fifteen (15) employees.

73.    Plaintiff is a "person claiming to be aggrieved…by [an] alleged employment practice" within the meaning of 42 U.S.C. § 2000e-5(f)(1).

12

74.    By the actions described above, Defendant subjected Plaintiff to a hostile work environment on the basis of her sex in violation of Title VII. Through its managerial agents, Defendant's harassment of the Plaintiff was because of her sex; objectively and subjectively offensive; sufficiently severe or pervasive to create an abusive working environment; and imputable to Defendant.

75.    At all times relevant, Plaintiff repeatedly endured unwelcome harassment on the basis of opposing harassment and gender discrimination that was severe and pervasive, and that altered the conditions of her employment, and created an abusive atmosphere.

76.    Defendant and its agents knew about the hostile work environment against Plaintiff because she filed a complaint with the regional office and repeatedly complained to management, human resources, investigators, and the police.

77.    Defendant failed to promptly address and remediate the harassment in question, resulting in retaliation against Plaintiff and creating an abusive work environment.

78.    Defendant violated Plaintiff's right to equal employment opportunity by allowing and failing to rectify a hostile work environment based on retaliation in violation of Title VII, which environment became increasingly caustic and harmful. All while causing Plaintiff ongoing emotional and psychological harm.

79.     Defendant's actions and omissions in violation of Title VII were undertaken willfully, wantonly and in reckless disregard for the Plaintiff's rights, entitling her to compensatory and punitive damages.

## SECOND CLAIM FOR RELIEF
### (Sex Discrimination)

80.     Plaintiff realleges and incorporates by reference the above paragraphs as though set forth separately herein.

81.     Under Title VII of the Civil Rights Act of 1964 it is unlawful to discriminate against employees on the basis of their gender in any of their terms and conditions of employment.

82.     Plaintiff made a complaint to the regional office on or about January 21, 2022. Thereafer, Plaintiff repeatedly endured unwelcome harassment such as comments about her body, being harassed and followed around the store, habitually being questioned if she could tie a cherry stem with her tongue, and the Store Manger threatened to take Plaintiff's job after she called the police to report being assaulted by her coworker.

83.     Plaintiff was constructively terminated from her employment when Defendant and its managers failed to relocate her to another store after she called the police and raised serious concerns for her safety.

84.     In subjecting Plaintiff to gender harassment, including hostile work environment, sexual harassment, retaliation for her rejection of harassment, and

14

constructive discharge, Defendant violated Title VII of the Civil Rights Act of 1964 and the public policy of North Carolina as expressed in N.C.G.S. § 143-422.2.

85.     Defendant's actions and omissions in violation of Title VII were undertaken willfully, wantonly and in reckless disregard for the Plaintiff's rights, entitling her to compensatory and punitive damages.

## THIRD CLAIM FOR RELIEF
### (Retaliation)

86.     Plaintiff realleges and incorporates by reference the above paragraphs as though set forth separately herein.

87.     By the actions described above, Defendant retaliated against the Plaintiff due to her complaints of unlawful discrimination. After she began complaining on January 21, 2022, Plaintiff's work environment was permeated by retaliatory comments and conduct by co-workers and management. Plaintiff suffered adverse employment in terms and conditions after her complaints. Further, Plaintiff suffered the ultimate adverse employment action when she was constructively terminated when Defendant failed to relocate Plaintiff to another store for her safety.

88.     Defendant's actions and omissions, all in violation of Title VII, were undertaken willfully, wantonly, and with reckless disregard for the Plaintiff's rights, entitled her to compensatory and punitive damages.

## FOURTH CLAIM FOR RELIEF
### (Negligent Infliction of Emotional Distress)

15

89.     Plaintiff realleges and incorporates by reference the above paragraphs as though set forth separately herein.

90.     By the negligent actions of Defendant described above, Defendant through its agents and employees, knew or should have known the hostile work environment and retaliatory conduct toward Plaintiff would offend, demean, intimidate, and injure her. As Plaintiff's employer, Defendant had a duty to prevent and remedy the mistreatment suffered by Plaintiff. As described above, Defendant breached this duty causing Plaintiff emotional harm.

91.     Plaintiff was subjected to a hostile working environment based upon management's sexual harassment, consisting of: unwanted sexual communication, unwanted physical contact by Monroe which was made known to a Parts Sales Manager, lewd sexual behavior made by a manager, and being called a bitch by the store manager.

92.     Upon information and belief, at all times relevant to Plaintiff's employment, the actions and harassment towards her were known to and recognized by management officials of Defendant.

93.     Emotional distress is a reasonably foreseeable result of Defendant's discrimination against, harassment of and retaliation against Plaintiff in the workplace and its creation of intolerable working conditions for Plaintiff.

Defendant's conduct is intolerable and outrageous to society's expectations of employers and managers.

94.     As a result of Defendant's negligent infliction of emotional distress with malice and reckless indifference to Plaintiff's rights, and directed at perpetuating the discrimination, harassment and retaliation Plaintiff suffered, Plaintiff is entitled to awards of compensatory and punitive damages in excess of $10,0000.

## FIFTH CLAIM FOR RELIEF
### (Negligent Retention and Supervision)

95.     Plaintiff realleges and incorporates by reference the above paragraphs as though set forth separately herein.

96.     Defendant owed a duty to use ordinary care to protect plaintiff from harassing, oppressive, and retaliatory conduct and injury from its managers and employees.

97.     Defendant had knowledge of the actions of its managerial employees and agents toward Plaintiff. Plaintiff reported the discriminatory, hostile and retaliatory work conditions to defendant on several occasions. Defendant knew or should have known that such work conditions existed for Plaintiff.

98.     At all times and places alleged herein, Defendant by and through its management officials, had the authority to terminate, discipline, and otherwise

control the behavior of its managerial employees but refused and failed to take appropriate remedial and corrective action to protect the Plaintiff.

99.    Defendant was negligent in failing to take adequate measures to supervise plaintiff's superiors and to stop their unlawful treatment of Plaintiff. To the contrary, Defendant shielded Plaintiff's supervisors and its agents, thus enabling further discriminatory, harassing and retaliatory behavior toward Plaintiff.

100.    Defendant's negligent supervision and retention of Plaintiff's superiors and of its employees fostered and validated an already oppressive work environment for Plaintiff, and was a direct and proximate cause of the injuries and harm to Plaintiff.

101.    As a direct result of the negligence of Defendant in retaining and supervising Plaintiff's supervisors, and condoning their conduct, Defendant acted wantonly, willfully, and in disregard of the protected rights of Plaintiff, thus entitling her to an award of compensatory and punitive damages in excess of $10,0000.

## SIXTH CLAIM FOR RELIEF
### (Wrongful Discharge)

102.    Plaintiff realleges and incorporates by reference the above paragraphs as though set forth separately herein.

103.    Defendant is an employer within the meaning of N.C.G.S. § 143-422.2, in that it regularly employs 15 or more employees.

18

104.   It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination.

105.   The adverse employment actions taken by Defendant including the refusal to promptly relocate her to another store for her safety, created intolerable working conditions for Plaintiff and was done for unlawful purposes in violation of the public policy of the State of North Carolina, specifically, the North Carolina Equal Practices Act, N.C.G.S. § 143-422.1 *et seq*, which makes discrimination on the basis of gender an unlawful practice in North Carolina.

106.   In subjecting Plaintiff to gender harassment, including hostile environment sexual harassment, Defendant violated the public policies of the State of North Carolina.

107.   The actions of Defendant described above, constitute Constructive Discharge. Plaintiff repeatedly complained to management, the regional office, human resources, and her store manager before Plaintiff called the authorities after she was assaulted by a male coworker. After Plaintiff called the police, the store manager made threats that he could terminate Plaintiff's employment. Defendant and its agents failed to relocate Plaintiff to another store after she raised serious concerns for her safety.

19

108. The termination of Plaintiff's employment by Defendant was a direct result of the discriminatory, harassing, and retaliatory conduct of Defendant's managers and agents, and the emotional distress caused by that conduct.

109. The Plaintiff was terminated because Plaintiff reported, opposed, and participated in the filing of a complaint and called the authorities for assistance.

110. Defendant's conduct, through its agents and employees, as alleged, violated Title VII and the common law and public policy of the State of North Carolina as set out in N.C.G.S. §143-422.2.

111. As a direct result of Plaintiff's wrongful termination by Defendant, Defendant acted wantonly, willfully, and in disregard of the protected rights of Plaintiff, thus entitling her to an award of compensatory and punitive damages in excess of $10,0000.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor against Defendant and order the following relief as allowed by law:

A. Declare the actions complained of herein to be illegal;

B. Award Plaintiff compensatory damages, including but not limited to those for past and future pecuniary and non-pecuniary losses, emotional distress, pain and suffering, inconvenience, mental anguish and loss of enjoyment of life;

C.  Award Plaintiff punitive damages for all claims as allowed by law;

D.  All damages allowable by law, common law, statute, rule and regulation against Defendant;

E.  Pre-judgment, and post-judgment interest against Defendant;

F.  Reasonable Attorneys' fees and costs of the action against Defendant; and

G.  Injunctive relief to prohibit unlawful conduct in the future; and

H.  Grant such other equitable and monetary relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Respectfully submitted this 24th day of December, 2024.

**HKM Employment Attorneys LLP**

*/s/ P. Sunny Panyanouvong-Rubeck*
Sunny Panyanouvong-Rubeck
N.C. Bar No. 39966

3623 Latrobe Drive, Unit 122
Charlotte, NC 28211
(980) 734-3851

spanyanouvong-rubeck@hkm.com

*Attorney for Plaintiff Sherryshurish Henderson*